# In the United States Bankruptcy Court
# for the
# Southern District of Georgia
## Statesboro Division

In the matter of: )
)
) **Chapter 11 Case**
WILLIAM SHAWN GILLIKIN )
) Number <u>09-60178</u>
*Debtor* )
)
)
)
)
DONALD F. WALTON, ) **FILED**
) Samuel L. Kay, Clerk
*Movant* ) United States Bankruptcy Court
) Savannah, Georgia
) By lbarnard at 5:00 pm, Nov 21, 2011
)
v. )
)
WILLIAM SHAWN GILLIKIN )
)
*Respondent* )

## MEMORANDUM AND ORDER
## ON TRUSTEE'S MOTION TO CONVERT TO CHAPTER 7

### FINDINGS OF FACT

Debtor filed Chapter 11 bankruptcy on March 3, 2009. Since that time, he has proposed four Disclosure Statements and six Plans of Reorganization. On June 15, 2011, Debtor filed his Third Amended Disclosure Statement and Plan, and on September 16, 2011, the Court entered an Order Approving it and sent Notice of the Hearing on Confirmation on November 4, 2011.

AO 72A
(Rev. 8/82)

The United States Trustee ("U.S. Trustee") had filed a Motion to Convert Debtor's case to Chapter 7 on September 12, 2011, and Debtor filed his Fourth Amended Plan the following day.

On October 11, 2011, the Court held a hearing on the Motion to Convert at which point it became obvious that Debtor's Fourth Amended Plan was unconfirmable because it relied on the Third Amended Disclosure Statement, but had made significant changes in the treatment of the largest secured creditor, Durden Banking Company ("Durden Bank"), by proposing to retain funds from a timber thinning operation approved March 29 that were to be paid to Durden Bank; thus, under the terms of that Order (Consent Order, Dckt. No. 280 (Mar. 29, 2011)), I concluded that the prior Disclosure Statement was inadequate as a basis for confirming the Fourth Amended Plan. Durden Bank then filed its ballot rejecting the Fourth Amended Plan and Debtor withdrew his Fourth Amended Plan. Chapter 11 Ballot Rejecting Plan, Dckt. No. 336 (Oct. 19, 2011); Withdrawal of Fourth Amended Plan of Debtor, Dckt. No. 338 (Oct. 19. 2011). Debtor stated that a new Motion to Sell Timber would be filed in an effort to fund the Third Amended Plan and that Motion was filed October 25, 2011. Motion to Sell Hardwood Timber, Dckt. No. 342 (Oct. 25, 2011). A hearing was held on November 4, the date previously scheduled for confirmation.

### DEBTOR'S MOTION TO SELL HARDWOOD TIMBER

In his Motion, Debtor asks for authority to sell "hardwood timber" free of liens and to use the proceeds to pay the accrued administrative claims in the case, including

certain taxes, domestic support arrearages, attorney's fees and others. These must be paid as a prerequisite to having a plan confirmed. 11 U.S.C. § 1129(a).

Creditor, Durden Bank, holds a security deed over the tract and the timber from which the timber would be removed (the "Tract") and filed an objection on November 3. The objection raised numerous points, but most relevant to this decision, asserted that (1) there was no showing the proceeds of the sale would be sufficient to pay the administrative expenses which are accruing daily; (2) the sale would diminish the residual value of the Tract; and (3) it would be premature to grant the Motion to Sell with the possibility of conversion looming. Response to Debtor's Motion for Authority to Sell Timber, Dckt. No. 345, paras. 7, 12, & 9 (Nov. 3, 2011).

At the November 4th hearing, the identity of the purchaser and the price were revealed; the proceeds of the sale would yield a maximum of $69,318.00 for a clear-cut harvest. Debtor's Trial Exhibit 3, (Nov. 4, 2011). Prior to seeing this offer or hearing the purchaser's testimony, Durden Bank believed the net hardwood proceeds would be $26,000.00 or less. Hearing Notes, Dckt. No. 347, p. 2 (Nov. 4, 2011). Durden Bank's estimate was obtained from Jimmy Lanier, an expert in timber and land management, who was agreed upon by Debtor and Durden Bank to oversee the separate timber thinning operation now taking place, from which Durden Bank will receive all of the proceeds. Hearing Notes, Dckt. No. 335, p. 11 (Oct. 11, 2011).

In the short time provided, Lanier was unable to perform a timber cruise in order to value the timber on the Tract, but relied on data from a 2009 appraisal, adjusted to the current size of the Tract. Lanier valued only the hardwood, the only timber mentioned in the Motion; however, Debtor revealed at the hearing that he intends to harvest all hardwood and pine from the Tract. Hearing Notes, Dckt. No. 347, pp. 6-7 (Nov. 4, 2011). Lanier, therefore, extrapolated an estimate value for all pine and hardwood of $47,000.00, but was careful to emphasize that his assumptions concerning the value of trees remaining from the larger tract which was the subject of his 2009 appraisal would need to be confirmed on site if a precise number was necessary. *Id.* at pp. 8-9.

After considering Lanier's hypothetical estimate of $47,000.00 and the offer of $69,000.00, I conclude that the price offered is reasonable. The looming question is whether the Court can or should permit Debtor to sell the timber and keep the proceeds over the objection of Durden Bank, which holds a security interest in the timber. This Court has ruled in a case with very similar facts that there is no authority to permit such a sale. *See in re* Del-A-Rae, No. 09-42267 (Bankr. S.D. Ga. Apr. 26, 2011). The debtor in Del-A-Rae argued that he could sell the timber collateral off a tract of land, free and clear of the creditor's security interest under 11 U.S.C. § 363(f), without damaging the value of the collateral because he had an equity cushion in the collateral. However, Georgia law not only does not authorize the sale of timber from land that another party holds legal title to, but it deems such action an intentional tort. O.C.G.A. § 51-12-51(a); *see* Oglethorpe Power Corp. v. Sheriff, 210 Ga. App. 299, 300 (1993). The statute extends liability for such tort to any

person who "buys, sells, cuts, removes, [or] disposes of such timber;" therefore, any purchaser of the timber would be liable for the damages, which are the total proceeds from the sale, interest and attorney's fees. O.C.G.A. § 51-12-51(a).

Debtor cannot withhold even part of the proceeds from the timber sale to pay administrative expenses and comply with this statute, thus Georgia law does not authorize Debtor to sell the timber as required by 11 U.S.C. § 363(f)(1). Furthermore, like the creditor in Del-A-Rae, Durden Bank cannot be forced to accept a money satisfaction of its interest in the timber because another means of relief exists, an injunction. *See* Gouveia v. Tazbir, 37 F.3d 295, 299 (7th Cir. 1994) (holding that a creditor may only be compelled to accept a money satisfaction for its interest in collateral if no other relief is available).

In light of this precedent, which I have reviewed and reaffirm, I conclude that this Motion to Sell cannot be authorized.

Confirmation of Debtor's Plan is wholly dependent on being able to use the timber sale proceeds to fund the administrative expenses. For the reasons stated above that will not work. However, even if selling the timber were possible, Debtor's Third Amended Plan cannot be confirmed, as written, because it provides that **all** proceeds from sales of land and timber be paid to Durden Bank (Debtor's Third Amended Plan, Dckt. No. 306, p. 3 (June 15, 2011)), while approval of the Motion to Sell would make that provision impossible to

%AO 72A
(Rev. 8/82)

5

perform. Since the hearing on the Motion to Sell, Debtor has filed a Fifth Amended Plan of Reorganization; it contemplates the timber sale and retention of the proceeds by Debtor. <u>Fifth Amended Plan</u>, Dckt. No. 346, p. 2 (Nov. 8, 2011). Therefore, this Plan suffers essentially the same Disclosure issues as the now withdrawn Fourth Amended Plan, in that the approved Disclosure Statement makes no mention of the newly proposed timber sale. Thus, I find the current Disclosure Statement does not meet the criteria of 11 U.S.C. § 1125, given the terms of the Fifth Amended Plan. Filing of another Disclosure Statement, then approval, and then a hearing on the Plan would delay any possible confirmation until February 2012 at the earliest,[1] leading to additional administrative expense accruals, which would likely exceed the $69,000.00 in proceeds contemplated by this Motion to Sell.[2] Even if the Disclosure Statement were adequate, I have held, supra, that this Court cannot approve the timber sale as proposed, so the Fifth Amended Plan is unconfirmable as written.

## TRUSTEE'S MOTION TO CONVERT TO CHAPTER 7

Title 11 U.S.C. § 1112 governs motions to convert or dismiss cases in bankruptcy. Part (b)(1) provides that at the request of a party in interest and after notice and a hearing the court shall convert or dismiss a case for cause, unless it finds that would not be

---

[1] The Federal Rules of Bankruptcy Procedure require at least twenty-eight days' notice for the court to hold a hearing on a disclosure statement and any objections or proposed modifications thereto and at least another twenty-eight days' notice "for filing objections and the hearing to consider confirmation of a plan." FRBP 2002(b), 3017.

[2] As of November 4 the administrative expenses were approximately $55,000 and continuing to accrue daily. Debtor's Fifth Amended Plan intends to pay Ms. Canady $20,000 at confirmation, $15,000 in child support arrears and $5,000 for two months advance; however, by confirmation, in February at the earliest, Debtor will owe $22,500 in child support.

in the best interest of creditors. This mandate is subject to the "special circumstances" exception of (b)(2), which provides that conversion or dismissal may be inappropriate if (1) the debtor or another party in interest proves: (A) a plan will likely be confirmed within a reasonable time, and (B) the grounds for dismissal or conversion arise under a provision other than (b)(4)(A); and (2) the Court specifically identifies unusual circumstances, establishing that conversion or dismissal is not in the best interest of creditors.

"Cause" is a broad and flexible term in the Code and is illustrated by the non-exhaustive list of examples provided in section 1112(b)(4). Each reason the U.S. Trustee cites in support of the Motion to Convert is supported by the evidence: (1) Debtor failed to comply with a Court order by not submitting his recast Plan on September 2, 2011, the date set by the Court, 1112(b)(4)(J). That Plan was filed one day after the U.S. Trustee's Motion to Convert was filed; (2) Debtor concedes he has failed to pay post-petition taxes, 1112(b)(4)(I); (3) Debtor concedes that he has failed to pay fees as required under 28 U.S.C. § 223, including the U.S. Trustee's quarterly fees, 1112(b)(4)(K); and (4) Debtor concedes he has failed to pay domestic support obligations on a current basis, 1112(b)(4)(P). Debtor believes he can cure each of these deficiencies if his Motion to Sell is granted.

Debtor's Motion to Sell cannot be approved for the reasons already discussed, and clearly "cause" exists for conversion. Either the Third Amended Plan that was superceded by the Fourth Amended Plan, which was later withdrawn, must be amended further or a new Disclosure Statement must be filed to support the Fifth Amended Plan.

Each avenue results in a delay from September 2011 to at least February 2012 in confirmation of a Plan in a case originally filed on March 3, 2009.

Debtor has made substantial progress in selling property and reducing his debt and a successful conclusion may appear close. But the test is (1) can I identify "unusual circumstances" that make conversion not in the best interest of creditors and (2) can Debtor prove that his Plan can be confirmed within a reasonable time period. Neither factor is present.

While this case is in some respects unique, there is no unusual circumstance which establishes that conversion would not be in the best interest of creditors. As the case stands today, it is anticipated that, if converted, all creditors would be paid in full by a liquidation, and possibly some residual dividend would remain for Debtor. In contrast, Debtor has to date earned no income to fund his ongoing expenses but has relied on property sales to fund his Plan. His inability to sell part or all of his remaining property over a two-year period suggests that a Trustee, rather than the Debtor, should continue that effort. The interest of creditors is best served by an orderly liquidation by an independent Trustee.

Nor can Debtor show the reasonable likelihood of confirmation within a reasonable period of time. What is "reasonable" must be assessed in light of the entire history of the case. It has been pending over two and one-half years and Debtor has been unable to secure confirmation of five previous plans. Debtor's Fifth Amended Plan,

AO 72A
(Rev. 8/82)

8

proposing to sell timber and retain some of the proceeds, cannot be approved for the reasons stated above. It is merely a last-ditch effort to delay the inevitable and illustrates the continuing impracticability in finding a path to confirmation. This in itself supports the Court's conclusion that there is no reasonable likelihood of confirmation.

This case began because Debtor, facing foreclosure at the hands of another creditor in October 2008, obtained a short-term, ninety-day note from Durden Bank that he was unable to pay at maturity. Hearing Notes, Dckt. No. 213, p. 4 (Oct. 8, 2010); Motion for Relief from Stay, Ex. A & B, Dckt. No. 52 (Apr. 28, 2009). When Durden Bank sought to foreclose after his default, he filed Chapter 11. He has indeed reduced the debt substantially, but has variously proposed amortization of Durden Bank's lien over fifteen years, to his current, but unconfirmable Plan to pay Durden Bank by Sept. 1, 2013. Debtor's Fifth Amended Plan, Dckt. No. 346, p. 5 (Nov. 8, 2011). The source of payment of that balance is not revealed, other than the prospect of clear-cutting timber and sale of some or all of the remaining land owned by Debtor. If the land is not sold by then Durden Bank would be forced to foreclose, nearly two years hence.

In light of the short-term nature of Durden Bank's undertaking, the suggestion that it will be paid or will, presumably, get possession of the collateral in late 2013, is not within a reasonable time. The Motion to Convert is GRANTED.

## ORDER

Based on the foregoing Findings of Fact and Conclusions of Law, it is ORDERED that the U.S. Trustee's Motion to Convert is GRANTED and this case is CONVERTED to CHAPTER 7.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia

This 21st day of November, 2011.